## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FIDELITY NATIONAL INFORMATION SERVICES, INC., | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 15-777-LPS-CJB |
| PLANO ENCRYPTION TECHNOLOGIES, LLC and KOBA HOLDINGS, LLC, | ) ) ) ) | |
| Defendants. | ) ) | |

### REPORT AND RECOMMENDATION

Presently pending before the Court is Defendants Plano Encryption Technologies, LLC

("PET") and Koba Holdings, LLC's ("Koba," and collectively with PET, "Defendants") motion

seeking dismissal of this action for lack of personal jurisdiction, lack of subject matter

jurisdiction and for failure to state a claim upon which relief can be granted, filed pursuant to

Federal Rules of Civil Procedure 12(b)(1), 12(b)(2) and 12(b)(6) (the "Motion"). (D.I. 11) For

the reasons set forth below, the Court recommends that Defendants' Motion be GRANTED-IN-

PART, on the grounds that the Court has no personal jurisdiction over PET, and that subject

matter jurisdiction does not exist as to claims against Koba.

## I.   BACKGROUND

### A.   The Parties and Related Background Information

Plaintiff Fidelity National Information Services, Inc. ("FIS" or "Plaintiff") is a Georgia

corporation with its headquarters and principal place of business in Jacksonville, Florida. (D.I. 1

at ¶ 2) As part of its business, FIS provides online banking services, mobile banking services and

other products to financial institutions throughout the United States. (*Id.*)

Defendant PET is a Texas limited liability company that was formed in March 2015; its principal place of business is in Plano, Texas. (*Id.* at ¶ 3) It is a wholly-owned subsidiary of Defendant Koba. (*Id.* at ¶ 4) According to records from the United States Patent & Trademark Office ("PTO"), PET is the assignee of United States Patent Nos. 5,974,550, 5,991,399 and 6,587,858 (the "patents-in-suit" or the "asserted patents"). (*Id.* at ¶¶ 11, 13) PET became the assignee of two of the asserted patents in April 2015 and the third in May 2015. (*Id.* at ¶ 13)

From May through July 2015, PET then sent letters to at least 16 financial institutions, all of which are FIS customers (the "infringement letters"). (*Id.* at ¶¶ 16-47) Each of these letters asserted that the recipient company infringed certain claims of some or all of the three PET asserted patents. (*Id.*)

The PET representative who signed each of these infringement letters was PET's Corporate Counsel and Chief Executive Officer, Bradley Liddle. (*See, e.g.*, *id.* at ¶ 14 & ex. A) Mr. Liddle is also listed as the initial registered agent on PET's Certificate of Formation, which was filed with the Office of the Secretary of State of Texas. (D.I. 14, ex. 4)

Defendant Koba is a Delaware limited liability corporation, with its principal place of business in Dover, Delaware. (D.I. 1 at ¶ 4) It was formed on February 27, 2015, and is listed as the sole managing member of PET. (*Id.* at ¶¶ 3-4; D.I. 14, ex. 4) In Koba's Certificate of Formation, filed with the office of the Secretary of State of the State of Delaware, Mr. Liddle is listed as an "Authorized Person[.]" (D.I. 14, ex. 3)

To date, PET has brought an infringement action against one FIS customer, Guaranty Bank & Trust, N.A. That suit was filed in the United States District Court for the Eastern District of Texas ("the Eastern District of Texas"). (*See Plano Encryption Techs., LLC v.*

2

*Guaranty Bank & Trust, N.A.*, Civil Action No. 2:15-cv-1480-JRG (E.D. Tex.))[1]

### B.     Procedural History

On September 3, 2015, FIS filed a Complaint against Defendants, seeking a declaratory

judgment that its online banking and mobile banking products have not and do not infringe the

asserted patents.  (D.I. 1 at ¶¶ 1, 57-68)  Chief Judge Leonard P. Stark referred the matter to the

Court for scheduling purposes, as well as for resolution of all motions to dismiss, stay, and/or

transfer venue.  (D.I. 7)

On October 29, 2015, Defendants filed the instant Motion.  (D.I. 11)  The parties

completed briefing on the Motion on November 27, 2015, (D.I. 15), and the Court heard oral

argument on the Motion on February 8, 2016, (D.I. 23 (hereinafter, "Tr.")).

## II.     STANDARD OF REVIEW[2]

### A.     Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) directs courts to dismiss a case when they lack

personal jurisdiction over the defendant.  When a defendant moves to dismiss a lawsuit for lack

of personal jurisdiction, the plaintiff bears the burden of showing the basis for jurisdiction.

*Power Integrations, Inc. v. BCD Semiconductor Corp.*, 547 F. Supp. 2d 365, 369 (D. Del. 2008).

To satisfy its burden, the plaintiff must produce "'sworn affidavits or other competent

---

[1]     That case has since been consolidated for all pre-trial issues (except venue) with other related cases brought by PET in the Eastern District of Texas. (*Plano Encryption Techs., LLC v. Guaranty Bank & Trust, N.A.*, Civil Action No. 2:15-cv-1480-JRG (E.D. Tex.), D.I. 8)

[2]     In the Motion, Defendants assert multiple bases for relief.  However, in light of the nature of the Court's recommendations here, the Court need not address all of the bases for dismissal raised by Defendants.  Therefore, in Sections II, III and IV of this Report and Recommendation, the Court will discuss only those factual and legal issues that are material to its recommendations.

evidence,'" since a Rule 12(b)(2) motion "'requires resolution of factual issues outside the pleadings.'" *Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 385 (D. Del. 2012) (quoting *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)); *see also Perlight Solar Co. Ltd. v. Perlight Sales N. Am. LLC*, C.A. No. 14-331-LPS, 2015 WL 5544966, at *2 (D. Del. Sept. 18, 2015). In a case (like this one) where a district court has not held an evidentiary hearing, the plaintiff must only make a *prima facie* showing that personal jurisdiction exists. *See Perlight Solar*, 2015 WL 5544966, at *2; *Hardwire, LLC v. Zero Int'l, Inc.*, Civil Action No. 14-54-LPS-CJB, 2014 WL 5144610, at *5 (D. Del. Oct. 14, 2014) (citing cases). All factual inferences to be drawn from the pleadings, affidavits and exhibits must be drawn in the plaintiff's favor at this stage. *Hardwire*, 2014 WL 5144610, at *5 (citing cases); *Power Integrations*, 547 F. Supp. 2d at 369.

In order to establish personal jurisdiction, a plaintiff must adduce facts sufficient to satisfy two requirements—one statutory and one constitutional. *Perlight Solar*, 2015 WL 5544966, at *2; *Hardwire*, 2014 WL 5144610, at *6. First, the Court must consider whether the defendant's actions fall within the scope of Delaware's long-arm statute. *Hardwire*, 2014 WL 5144610, at *6; *see also Power Integrations*, 547 F. Supp. 2d at 369. Second, the Court must determine whether the exercise of jurisdiction comports with the defendant's right to due process. *Hardwire*, 2014 WL 5144610, at *6; *Power Integrations*, 547 F. Supp. 2d at 369 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

### B.   Jurisdictional Discovery Regarding the Personal Jurisdiction Inquiry

As a general matter, "jurisdictional discovery should be allowed unless the plaintiff's claim [of personal jurisdiction] is 'clearly frivolous.'" *Mass. Sch. of Law at Andover, Inc. v. Am.*

4

*Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) (citations omitted); *accord Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) ("Although the plaintiff bears the burden of demonstrating facts that support personal jurisdiction . . . courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'") (citations omitted). Any consideration of this question "begins with the presumption in favor of allowing discovery to establish personal jurisdiction." *Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 474 (D. Del. 1995). If a plaintiff makes factual allegations that suggest the possible existence of requisite contacts between the defendant and the forum state with reasonable particularity, the court should order jurisdictional discovery. *See Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 157 (3d Cir. 2010); *Power Integrations*, 547 F. Supp. 2d at 369.

However, a court should not permit jurisdictional discovery as a matter of course; before allowing jurisdictional discovery to proceed, "[t]he court must be satisfied that there is some indication that th[e] particular defendant is amenable to suit in th[e] forum." *Hansen*, 163 F.R.D. at 475; *accord Draper, Inc. v. MechoShade Sys., Inc.*, No. 1:10-cv-01443-SEB-TAB, 2011 WL 1258140, at *1 (S.D. Ind. Mar. 31, 2011) ("While courts have the power to grant jurisdictional discovery, a motion to dismiss for lack of personal jurisdiction does not automatically trigger a right to jurisdictional discovery."). If a plaintiff does not come forward with "*some* competent evidence" that personal jurisdiction over the defendant might exist, a court should not permit jurisdictional discovery to proceed. *Hansen*, 163 F.R.D. at 475 (emphasis in original). Put another way, a plaintiff may not undertake a "fishing expedition based only upon bare allegations, under the guise of jurisdictional discovery." *Eurofins Pharma*, 623 F.3d at 157; *see also Mass. Sch. of Law*, 107 F.3d at 1042 (noting that a mere "unsupported allegation" that the

5

prerequisites for personal jurisdiction have been met would amount to a "'clearly frivolous'"

claim, and would not warrant the grant of jurisdictional discovery) (citations omitted).

### C.    Subject Matter Jurisdiction

The Declaratory Judgment Act requires that a "case of actual controversy" exist between

the parties before a federal court may exercise jurisdiction.  28 U.S.C. § 2201(a).  A court has

subject matter jurisdiction over a declaratory judgment action only if the "facts alleged, under all

the circumstances, show that there is a substantial controversy, between parties having adverse

legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory

judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal quotation

marks and citation omitted).  A case or controversy must be "based on a *real* and *immediate*

injury or threat of future injury that is *caused by the defendant*[]—an objective standard that

cannot be met by a purely subjective or speculative fear of future harm." *Prasco, LLC v. Medicis

Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008) (emphasis in original).

## III.   DISCUSSION

The Court will address two issues below.  The first inquiry, regarding personal

jurisdiction, is relevant to PET.  The second, regarding subject matter jurisdiction, relates to

Koba.

### A.    Personal Jurisdiction

As noted above, in the face of a challenge to personal jurisdiction, courts first assess

whether a plaintiff has made a *prima facie* showing that the defendant's actions fall within the

scope of Delaware's long-arm statute and do not offend a defendant's right to due process.

However, for reasons that will become clear in the discussion below, FIS is leaps and bounds

away from making such a *prima facie* showing here as to Defendant PET, under either the

statutory or constitutional prong.[3]   Consequently, the Court will focus on the more pressing issue:

whether FIS has even set forth sufficient evidence to warrant jurisdictional discovery on the

question of personal jurisdiction.   To that end, it will focus on the statutory prong of the inquiry,

as FIS's failure to make the requisite showing there is ultimately dispositive.

FIS's main argument as to why the Court has personal jurisdiction over PET relates to the

so-called "alter ego" theory.[4]   The Court will first set out the legal requirements necessary to

establish that this theory is viable in a given case, as relevant to the question of personal

jurisdiction.   Then the Court will explain why FIS has not demonstrated a right to jurisdictional

discovery as to that theory.

### 1.   The Alter Ego Theory

Even where a defendant cannot itself be shown to have conducted acts that satisfy one of

the prongs of Delaware's long-arm statute, 10 Del. C. § 3104 ("Section 3104"), Delaware courts

---

[3]       The Court focuses here on whether there is personal jurisdiction over Defendant
PET (and not Defendant Koba), because it is not disputed that the Court has personal jurisdiction
over Koba, a company formed in Delaware.

[4]       In its Complaint, FIS also includes allegations stating that PET is a "mere agent of
Koba Holdings." (D.I. 1 at ¶ 5)  In addition to the alter ego theory, Delaware law provides that a
court may establish personal jurisdiction over a defendant based on what is known as the "agency
theory." *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1463 (D. Del. 1991);
*see also E.I. DuPont de Nemours & Co. v. Heraeus Holding GmbH*, Civ. Action No. 11-773-
SLR-CJB, 2012 WL 4511258, at *13 n.12 (D. Del. Sept. 28, 2012).  The agency theory differs
from the alter ego theory in that it examines the degree of control which the parent exercises over
the subsidiary. *Applied Biosystems, Inc.*, 772 F. Supp. at 1463.  In its briefing, FIS made clear
that, despite what is alleged in its Complaint, it is not asserting personal jurisdiction over PET
based on an agency theory. (D.I. 14 at 6 (FIS noting that the allegations in paragraphs 5-6 of its
Complaint are sufficient to "satisfy FIS's burden to plausibly allege that the *corporate veil
between Koba and PET should be pierced*.") (emphasis added); *see also id.* at 1))  Thus, the
Court will not herein address the issue of agency.

have found that a statutorily effective basis for exerting jurisdiction exists if the requirements of

the alter ego theory are satisfied. *HMG/Courtland Props., Inc. v. Gray*, 729 A.2d 300, 307 (Del.

Ch. 1999) (noting that satisfaction of this theory, "when coupled with the 'agency provision' in

[Section 3104], provide[s] a statutorily and constitutionally effective basis for exerting

jurisdiction over nonresidents who engage in unlawful Delaware-directed activity in concert with

others"); *see also Perlight Solar*, 2015 WL 5544966, at *4.  Delaware courts have "rather

strictly" applied the alter ego theory of personal jurisdiction, using an analysis similar to that

used in determining whether to pierce the corporate veil. *HMG/Courtland Props.*, 729 A.2d at

307; *see also Case Fin., Inc. v. Alden*, Civil Action No. 1184-VCP, 2009 WL 2581873, at *4

(Del. Ch. Aug. 21, 2009) (noting that Delaware courts will only disregard the corporate form in

the "'exceptional case'") (citation omitted).  In the cases in which the alter ego doctrine has been

applied, courts have examined the record for two critical elements:

> 1) that the out-of-state defendant over whom jurisdiction is sought
> has no real separate identity from a defendant over whom
> jurisdiction is clear based on actual domicile or satisfaction of
> Delaware's long-arm statute; and 2) the existence of acts in
> Delaware which can be fairly imputed to the out-of-state defendant
> and which satisfy the long-arm statute and/or federal due process
> requirements.

*HMG/Courtland Props., Inc.*, 729 A.2d at 307-08.[5]

Courts will disregard the corporate entity "in the interest of justice, when such matters as

---

[5]      The Court focuses on the first element of this test—i.e., whether PET has no real
separate identity from Koba.  However, it is worth noting that Plaintiff has pointed to no specific
acts taken in Delaware by Koba (or PET), other than Koba's formation in Delaware, which pre-
dated PET's existence.  And there is authority from our Court indicating that in such a
circumstance, Plaintiff could not meet the second element of this test. *See Reach & Assocs., P.C.
v. Dencer*, 269 F. Supp. 2d 497, 506-07 (D. Del. 2003); *see also IM2 Merch. & Mfg., Inc. v.
Tirex Corp.*, No. CIV.A.18077, 2000 WL 1664168, at *4-5 (Del. Ch. Nov. 2, 2000).

fraud, contravention of law or contract, public wrong, or . . . equitable consideration among members of the corporation . . . are involved." *Pauley Petroleum, Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. 1968); *see also Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1463 (D. Del. 1991) ("Under the alter ego or piercing the corporate veil doctrine, courts will ignore the corporate boundaries between parent and subsidiary if fraud or inequity is shown."). And so, in assessing whether to disregard the corporate form, Delaware courts consider whether there has been a showing that the parent/subsidiary relationship would work an element of fraud, injustice or inequity. *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, No. Civ. 04-1199-SLR, 2005 WL 851126, at *3 (D. Del. Apr. 13, 2005); *Mason v. Network of Wilmington, Inc.*, No. Civ.A. 19434-NC, 2005 WL 1653954, at *3 (Del. Ch. July 1, 2005). Additionally, Delaware courts examine a number of factors to determine whether the two entities appear to be legally distinct entities. *SRI Int'l, Inc.*, 2005 WL 851126, at *3 (noting that this inquiry assesses whether "there is a lack of attention to corporate formalities or complete domination and control by the parent corporation"); *Mason*, 2005 WL 1653954, at *3. These factors include the following: (1) whether the corporation is adequately capitalized; (2) whether the corporation is solvent; (3) whether corporate formalities were observed (e.g., whether dividends were paid, corporate records kept, or officers and directors functioned properly); (4) whether the controlling shareholder siphoned company funds; and (5) in general, whether the corporation simply functioned as a facade for the controlling shareholder. *Case Fin., Inc.*, 2009 WL 2581873, at *4; *Sprint Nextel Corp. v. iPCS, Inc.*, Civil Action No. 3746-VCP, 2008 WL 2737409, at *11 (Del.

9

Ch. July 14, 2008).[6]

## 2. FIS's Alter Ego-related Allegations Do Not Warrant Jurisdictional Discovery

FIS argues that its allegations regarding the Court's ability to exercise personal

jurisdiction over PET at least meet the threshold requirements to allow for jurisdictional

discovery. (D.I. 14 at 18)  However, although the standard for jurisdictional discovery is

admittedly not high, FIS's allegations fall short of the bar.  FIS has put forward a notable lack of

---

[6]      Our Court has repeatedly looked to the requirements of Delaware law in order to determine whether a plaintiff proceeding under the alter ego theory can satisfy the first prong of the test for personal jurisdiction. *See, e.g., Perlight Solar*, 2015 WL 5544966, at *3-4; *MacQueen v. Union Carbide Corp.*, Civil Action No. 13-831-SLR-CJB, 2014 WL 6809811, at *5-6 (D. Del. Dec. 3, 2014); *Reach & Assocs., P.C.*, 269 F. Supp. 2d at 506.  Yet when discussing the factors that the Court should consider "to determine whether a corporate veil should be pierced[,]" FIS cites not to Delaware caselaw, but to the treatment of the alter ego doctrine in *United States v. Pisani*, 646 F.2d 83 (3d Cir. 1981).  (D.I. 14 at 6)  In *Pisani*, however, the United States Court of Appeals for the Third Circuit was utilizing the alter ego doctrine not to address a question of personal jurisdiction, but instead to determine whether an individual business owner should be held liable for the return of certain overpayments that were made to his solely-owned corporation. *Pisani*, 646 F.2d at 84-85.  In doing so, the *Pisani* Court decided that it should craft a "federal rule" for application of the alter ego doctrine—but only because the case involved application of a *federal* statute, which in turn set guidelines for the *federal* Medicare program. *Id.* at 86-88.  The *Pisani* Court found that a uniform federal rule was needed in those circumstances, because it would be "undesirable to let the rights of the United States in this area change whenever state courts issue new decisions on piercing the corporate veil." *Id.* at 88; *see also United States v. Golden Acres, Inc.*, 702 F. Supp. 1097, 1102-04 (D. Del. 1988) (applying the "federal alter ego standard" to assess parties' personal liability, but only because the matter involved promotion of the federal objectives of the National Housing Act, as well as the question of uniform enforcement of loan agreements held by a federal government agency).  Here, in contrast, the alter ego doctrine is being utilized in an attempt to demonstrate how the requirements of the Delaware long-arm statute have been met—a prong of the test for personal jurisdiction that focuses on the law of the *state* in which the action is brought. *See, e.g., Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp.*, 395 F.3d 1315, 1319 (Fed. Cir. 2005); *Boston Scientific Corp. v. Wall Cardiovascular Techs., LLC*, 647 F. Supp. 2d 358, 364 (D. Del. 2009).  Absent an explanation as to why it is appropriate to do otherwise, the Court will continue to look to Delaware caselaw in situations like these, in order to assess whether two corporate entities are each other's alter ego.

evidence from which the Court could conclude that PET had "no real separate identity from" Koba, or that the circumstances relating to the association between Koba and PET sound in, as FIS asserts, (D.I. 1 at ¶ 6), injustice or inequity.

As to the separation of the corporate forms, for example, there is literally no evidence of record regarding the key factors that Delaware courts employ in investigating this issue. That is, FIS puts forward no evidence regarding PET's capitalization, its solvency, whether it observed corporate formalities distinguishing it from Koba, whether Koba misused PET's funds, or whether, in any other way, PET functioned as a "facade" for Koba.

In an attempt to stave off Defendants' Rule 12(b)(2) Motion, FIS does make certain arguments. Yet those arguments are all unavailing.

For example, FIS first trumpets the content of certain allegations set forth in its Complaint. (D.I. 14 at 18) The relevant portion of the Complaint states:

> On information and belief, the actions of PET are attributable to Koba Holdings because of one or more of the following factors: (1) PET is undercapitalized; (2) the failure to observe corporate formalities between PET and Koba Holdings; (3) nonpayment of dividends by PET; (4) siphoning of PET's funds by Koba Holdings; (5) the absence of corporate records; and (6) PET is merely a facade for the operations of the dominant stockholder or stockholders.

(D.I. 1 at ¶ 6 (*quoted in* D.I 14 at 5-6))

As an initial matter, it is worth noting that once a motion to dismiss for lack of personal jurisdiction is made, a plaintiff cannot rely "on the bare pleadings alone" in order to withstand the motion; it must respond "with actual proofs, not mere allegations." *Time Share Vacation Club*, 735 F.2d at 66 n.9; *Gannett Satellite Info. Network, Inc. v. Office Media Network, Inc.*, C.A. No. 08-96-GMS, 2009 WL 3425960, at *2 (D. Del. Oct. 23, 2009) (noting the same in

11

assessing whether jurisdictional discovery was warranted); *Hansen*, 163 F.R.D. at 476 (same). But even looking at the content of the Complaint, it is notable that in the above paragraph, FIS does nothing more than simply recite the factors relevant to the test for assessing whether two entities are alter egos, and then state that "on information and belief" the factors are at play here. That does not suggest the existence of facts that might support FIS's claim. (D.I. 14 at 6) Instead, it suggests that FIS has copied down a list of factors. This cannot amount to production of "some competent evidence" as to the existence of personal jurisdiction.

Next, FIS points to the fact that, as part of its submission, PET provided a declaration from Mr. Liddle. (*Id.* (referencing D.I. 13)) FIS notes that Mr. Liddle's declaration was "silent" about the allegations in FIS's Complaint relating to the applicability of the alter ego factors, and concludes that "Mr. Liddle's silence on these issues is telling." (*Id.*; *cf.* Tr. at 73-74) The Court disagrees that any silence from Mr. Liddle is "telling" as to this inquiry, since the absence of evidence is not evidence. Put differently, FIS cannot credibly assert that the *lack* of information in a declaration filed by its adversary amounts to the *presence* of "some competent evidence" warranting jurisdictional discovery.

FIS next refers to the fact that in PET's Certificate of Formation, Koba was listed as PET's "Managing Member[.]" (D.I. 14 at 7; *id.*, ex. 4; *see also id.*, ex. 5 (citing to PET's disclosure statement in another suit, which confirms that Koba is PET's parent company, and that Koba wholly owns PET)) From there, it contends that "[w]ith a limited liability company that has a single managing member, the managing member is generally responsible for all activities and decision-making of the LLC[]" and, thus, here the "only reasonable inference" that can be drawn from the corporate relationship between Defendants is that "all daily business activities of

PET, to the extent they are distinct from Koba, are being controlled and directed by its sole managing member Koba[.]" (D.I. 14 at 7)

However, the laws of Texas, under which PET was formed, treat limited liability companies like PET as distinct jural entities. *Boston Scientific Corp. v. Wall Cardiovascular Techs., LLC*, 647 F. Supp. 2d 358, 368 (D. Del. 2009); *Barrera v. Cherer*, No. 04-13-00612-CV, 2014 WL 1713522, at *2 (Tex. App. Apr. 30, 2014). And Delaware law states that the presence in Delaware of a person with management authority over an out-of-state distinct jural entity will not itself subject that entity to jurisdiction unless "that presence is in connection with the affairs of the entity." *Carlton Invs. v. TLC Beatrice Int'l Holdings, Inc.*, Civ. A. No. 13950, 1995 WL 694397, at *11 (Del. Ch. Nov. 21, 1995); *cf. Boston Sci. Corp.*, 647 F. Supp. 2d at 368 (applying Delaware law and granting a motion to dismiss for lack of personal jurisdiction, because Texas law treated the out-of-state defendant LLC at issue as a separate jural entity from one of its Delaware LLC members, such that the out-of-state defendant LLC was "not subject to the personal jurisdiction of its members[]"). Yet here, there is no record evidence that Koba's presence in Delaware is in connection with the affairs of PET. To the contrary, all of the record evidence in this case indicates that PET, not Koba, is the entity associated with the acts giving rise to this suit—and that it conducted those acts in Texas. This includes the fact that the licensing letters referenced in the Complaint (1) were sent by a PET employee (Mr. Liddle); (2) identified PET as the owner of the patents; and (3) were sent from PET's office in Texas. (*See, e.g.*, D.I. 1, ex. A)[7]

---

[7]     In its briefing, FIS noted that "under certain tax situations" the United States Internal Revenue Service ("IRS") considers a single-member limited liability company "either as a corporation, partnership, or as part of the owner's tax return"—the last of these scenarios is

So far as the Court can see, FIS cites only two strands of actual evidence in pushing back against Defendants' Rule 12(b)(2) Motion.  The first relates to the timing of Koba's and PET's formation, and to PET's acquisition of the patents-in-suit.  There, there is evidence that:  (1) Koba was formed in Delaware on February 27, 2015; (2) PET was formed in March 2015; and (3) PET became the assignee of the asserted patents in April and May of 2015.  (D.I. 1 at ¶¶ 3-4, 13; Tr. at 65)  This timeline, FIS asserts, is evidentiary support for its alter ego theory because "within just a matter of weeks or a couple of months you have the establishment of Koba, PET, the acquisitions of the three patents[,]" raising "a significant question about the separate viability of the two entities under the alter ego theory."  (Tr. at 65)  The second strand of evidence relates to Mr. Liddle's documented role with both companies (as the attorney who helped form Koba and as the CEO and Corporate Counsel for PET), as well as FIS's assertion that Mr. Liddle is "well-known for his involvement in at least one controversial patent assertion company, Personal Audio."  (D.I. 14 at 7-8; *see also* Tr. at 65, 68-70)

The Court cannot agree that these evidentiary strands amount to "some competent evidence" as to the viability of the alter ego theory.  After all, it is not uncommon for businesses to enforce their patent rights through private companies, and "such a business strategy is not nefarious."  *Cradle IP, LLC v. Texas Instruments, Inc.*, 923 F. Supp. 2d 696, 699 (D. Del. 2013).  Nor it is uncommon, or even particularly noteworthy, for entities like PET to choose their situs of incorporation in a state (like Texas) in which they wish to pursue litigation.  *Cf. Elm 3DS*

---

known as treating the limited liability company as a "'disregarded entity.'"  (D.I. 14 at 7; *see also* Tr. at 69)  Yet here—where there is no information of record as to whether PET is in fact treated as a "disregarded entity" by the IRS, nor about any other facet of PET or Koba's tax history—the Court does not understand how FIS's citation to general IRS policy is relevant.  (*See* Tr. at 77)

*Innovations LLC v. SK Hynix Inc.*, Civil Action No. 14-1432-LPS-CJB, 2015 WL 4967139, at *5

(D. Del. Aug. 20, 2015) (concluding that the plaintiff's decision to incorporate in Delaware, five

months prior to bringing a patent infringement suit in this District, had not been shown to be

anything other than the "product of a legitimate, business-related choice" for purposes of a

motion to transfer); *Cradle IP, LLC*, 923 F. Supp. 2d at 699 (same). As for Mr. Liddle's

involvement in another "controversial patent assertion company," FIS includes citation in their

brief to a few articles. (D.I. 14 at 7-8 (citations omitted)) Those articles simply indicate that Mr.

Liddle was the CEO and general counsel to an entity named Personal Audio LLC ("Personal

Audio"), that Personal Audio asserted a patent in 2014 against certain entities involved in the

podcasting business, and that certain claims of this patent were eventually invalidated after an

*inter partes* review. (*Id.*) The fact that Mr. Liddle has been associated with another patent

assertion entity in the past does not speak compellingly to any of the alter ego factors, and does

not shed any light on whether PET and Koba are distinct legal entities.

Although FIS has not provided competent evidence that PET and Koba are indistinct

legal entities, the Court also pauses briefly to address the separate requirement that there be some

fraud, inequity or injustice afoot before the alter ego theory is invoked. On this front, FIS's

Complaint alleges that:

> Accordingly, the corporate veil between PET and Koba Holdings
> should be pierced because PET and Koba Holdings operate as a
> single economic entity, and an overall element of unfairness and
> injustice would exist if PET and Koba Holdings were not treated as
> a single economic entity.

(*Id.* at 6-7 (quoting D.I. 1 at ¶ 6); *see also* D.I. 14 at 16 ("Moreover, Defendants' motion itself

has established why the corporate name-game here constitutes fraud and injustice.")) Yet the

15

Court here cannot see any support for the claim that inequity or some other injustice is at play,

sufficient to put FIS's charges on this score beyond the realm of the "clearly frivolous."

Indeed, in this regard, the case is very similar to that in *LivePerson, Inc. v. NextCard,*

*LLC*, C.A. No. 08-062-GMS, 2009 WL 742617 (D. Del. Mar. 20, 2009). In *LivePerson*, a case

involving allegations of patent infringement, the plaintiff sought to establish personal jurisdiction

over defendants, *inter alia*, by utilizing the alter ego theory. *Liveperson*, 2009 WL 742617, at *5.

This Court ultimately concluded, however, that the plaintiff had not met its burden of proof and

was not entitled to jurisdictional discovery on the topic. *Id.* In coming to these conclusions, the

*LivePerson* Court noted that the plaintiff had pointed "to no evidence whatsoever of any fraud or

inequity" as to the relationship among defendants and a related third-party entity. *Id.* Instead,

the "only support for applying the alter ego theory . . . [was plaintiff's] own speculation that

some fraud, injustice, or inequity in the use of the corporate form *may* exist[,]" due to the fact

that the third-party company had created the parent company of one defendant and this defendant

itself "the day after [the third-party company] acquired the [patents-in-suit]." *Id.* (emphasis in

original). The *LivePerson* Court concluded that "such a speculative reason is not sufficient to

apply the alter ego theory and ignore the corporate boundaries between [the third-party company]

and the defendants." *Id.* In light of that, and faced with plaintiff's "mere unsupported allegations

regarding personal jurisdiction over the defendants[,]" this Court determined that allowing the

plaintiff to "conduct jurisdictional discovery would amount to allowing it to conduct a fishing

expedition in order to construct a basis for jurisdiction." *Id.* at *6; *cf. Micro Design LLC v. Asus*

*Comp. Int'l*, Civil Action No. 14-837-LPS-CJB, 2015 WL 2089770, at *5 (D. Del. May 1, 2015)

("Thus, there is often an element of 'business/litigation strategy' inherent in the decision to form

16

an entity in a particular state that relates to where that entity wishes to pursue litigation—but that reality does not generally give rise to the conclusion that the decision itself is a fraud or fiction, nor one born of illegitimate motives.").

Here, as in *LivePerson*, FIS has alleged merely that, in the span of a few months, the Defendants were formed and PET acquired the asserted patents. Those facts, and the fact that Mr. Liddle has a connection to both Defendant entities provide no suggestion that the relationship between Koba and PET is one promoting injustice or inequity. Like the plaintiff in *LivePerson*, FIS is proffering little more than speculation on these grounds.

Ultimately, FIS has made a very weak submission as to the applicability of the alter ego theory. (Tr. at 73 (FIS's counsel acknowledging that FIS's arguments in favor of jurisdictional discovery did not amount to the "strongest case")) Granting jurisdictional discovery here would thus amount to sanctioning a "fishing expedition" in order to allow FIS to "construct a basis for jurisdiction." *LivePerson*, 2009 WL 742617, at *6; *cf. Perlight Solar*, 2015 WL 5544966, at *5 (denying jurisdictional discovery where the plaintiff's conclusory allegations regarding the alter ego factors did not suggest "with reasonable particularity the possible existence of the requisite contacts"); *MacQueen v. Union Carbide Corp.*, Civil Action No. 13-831-SLR-CJB, 2014 WL 6809811, at *9 (D. Del. Dec. 3, 2014) ("Put a different way, as to even the one theory (the alter ego theory) that Plaintiff presses in her briefing, the Court has no real meaningful evidence to suggest the theory would or should apply. In such a case, jurisdictional discovery on the question would be premised on little more than speculation—and speculation is an insufficient basis on

which to order such relief.").[8]  The Court thus recommends denial of that request and that

Defendants' Rule 12(b)(2) Motion be granted as to PET.

### B.    Subject Matter Jurisdiction

Were PET dismissed from this case, that would still leave Koba as a Defendant.  But

here, it is not seriously disputed that there is no basis to find that a case or controversy exists (or

could possibly exist) between FIS and Koba.  (D.I. 12 at 2, 3, 11)  The record is clear—according

to facts asserted in FIS's Complaint—that:  (1) pursuant to the PTO's records, PET (not Koba) is

the assignee of the patents-in-suit; and (2) PET (not Koba) is the entity that has been attempting

---

[8]        FIS does make one other argument in its briefing as to why personal jurisdiction exists over PET (an argument that it concedes is even weaker than its argument regarding the alter ego theory):  that PET's own actions trigger personal jurisdiction under Section 3104(c)(1) of the Delaware long-arm statute. 10 Del. C. § 3104(c)(1); *see also* (D.I. 14 at 8-9; Tr. at 62-65). Section 3104(c)(1) provides personal jurisdiction over any nonresident who "[t]ransacts any business or performs any character of work or service in" Delaware. 10 Del. C. § 3104(c)(1). In making this argument, FIS points to the fact that Koba was formed in Delaware, and argues that PET must in some way have transacted business or otherwise performed work in Delaware, because Koba is PET's sole managing member and "the managing member is generally responsible for all activities and decision-making of the LLC." (D.I. 14 at 9)  FIS, however, has pointed to no specific acts taken in Delaware by PET (via a Koba-affiliated employee or otherwise). (*See also* D.I. 13 at ¶ 4 (Mr. Liddle's declaration, in which he asserts that PET has no contact of any kind with Delaware))  Indeed, the only Delaware-related activity in the record is the fact of Koba's formation in Delaware. (D.I. 12 at 8-9)  And so there can be no basis to find that *PET* has transacted business or performed any work *in Delaware* at all, let alone transacted business or performed work that in some way relates to the cause of action at issue. *See, e.g., Shoemaker v. McConnell*, 556 F. Supp. 2d 351, 354 (D. Del. 2008) (noting that Section 3401(c)(1) is relevant to specific jurisdiction, and requires that the cause of action at issue arise from the defendant's conduct in the forum state). The fact that PET's parent, Koba, was formed in Delaware, without more, is insufficient to provide for specific personal jurisdiction over PET pursuant to Section 3104(c)(1). *Cf. Boston Sci. Corp.*, 647 F. Supp. 2d at 366 ("[T]ransacting business with a Delaware corporation outside of Delaware does not satisfy Delaware's long-arm statute."); *Monsanto Co. v. Syngenta Seeds, Inc.*, 443 F. Supp. 2d 636, 645 (D. Del. 2006) (noting that "the mere fact that a non-Delaware corporation owns a Delaware subsidiary is not sufficient in itself to justify Delaware's exercise of personal jurisdiction over the non-Delaware parent" where none of the claims at issue arose from the act of incorporation itself).

to license and enforce those patents. (D.I. 1 at ¶¶ 13-14; *see also* Tr. at 94)  As the assignee, PET alone has standing to sue for infringement of the patents; Koba would have no such standing. *See Morrow v. Microsoft Corp.*, 499 F.3d 1332, 1340-41 (Fed. Cir. 2007).  And so, there could be no actual or imminent injury to FIS *caused by Koba* that would give the Court declaratory judgment jurisdiction over any "rights and other legal relations" that FIS might have *with respect to Koba*.  28 U.S.C. § 2201(a).  It would be futile to argue otherwise.  For these reasons, the Court also recommends that the Motion be granted as to Koba, pursuant to Rule 12(b)(1), due to a lack of subject matter jurisdiction.

## IV.   CONCLUSION

For the reasons set out above, the Court recommends that Defendants' Motion be GRANTED-IN-PART, as dismissal of PET is appropriate due to the lack of personal jurisdiction, and dismissal of Koba is appropriate due to the lack of subject matter jurisdiction.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b).  The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court.  *See Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987); *Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.

Dated: April 25, 2016

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE